[887 NYS2d 145]

Sara B. Sonne, Respondent, v Board of Trustees of Village of Suffern et al., Appellants.

Second Department, September 29, 2009

194

**APPEARANCES OF COUNSEL**

*Hodges, Walsh & Slater, LLP*, White Plains (*Paul E. Svensson* of counsel), for appellants.

*Feerick Lynch MacCartney, PLLC*, South Nyack (*Mary E. Marzolla* of counsel), for respondent.

**OPINION OF THE COURT**

CHAMBERS, J.

After a protracted land-use dispute, the plaintiff commenced the instant action against the Village of Suffern (hereinafter the Village), its Board of Trustees, and certain village officials, inter alia, seeking damages for alleged violations of her constitutional rights to substantive and procedural due process, and of her right to be compensated for the taking of her property. The primary issues in the case before us are whether the plaintiff has stated causes of action sounding in violation of 42 USC § 1983 (*see* CPLR 3211 [a] [7]), and whether the defendants are entitled to summary judgment (*see* CPLR 3212).

Factual Background

The plaintiff, Sara B. Sonne, owns commercial property in the village (hereinafter the subject property). The building on the subject property is approximately 100 years old. It is zoned for commercial use as part of the central business (hereinafter CB) district, and has three floors. The plaintiff planned to rent the third floor to a commercial tenant. The defendants are the Village, its Board of Trustees, its Deputy Building Inspector, Steven Conlee, and its Code Enforcement Officer, John Loniewski.

The catalyst for the plaintiff's dispute with the defendants is their refusal to permit the plaintiff to use the third floor on the ground that it has only one usable exit, in purported violation of the current New York State Uniform Fire Prevention and Building Code Act (Executive Law art 18; hereinafter the Fire Code).

The plaintiff presented documentary evidence indicating that a certificate of occupancy issued for the subject property on October 2, 1985, states that "permission is hereby granted for its occupancy" for "stores and loft space." At some point, this certificate of occupancy was marked "void." A second certificate of occupancy dated February 16, 1988 stated that the permitted use of the subject property was as a "store and loft." Both certificates of occupancy had the word "copy" inserted in a space for an application number.

Steven Conlee, a Deputy Inspector for the Town of Ramapo, who acted as the Deputy Building Inspector of the Village pursuant to a contract between the Town and the Village, testified at his deposition that a certificate of occupancy which had the word "copy" inserted in the space for an application number

was considered void by village authorities. To his knowledge, no one informed relevant property owners of this policy. According to Loniewski, the reason for this policy was that there were cases where the former Village Building Inspector from 1972 until 1992, Louis Glinsky, did not assign a number to an application, and just wrote "copy." He also noted that Louis Glinsky issued certificates of occupancy without performing the required inspections.

In 1989 Kiplou Realty, an adjoining property owner, installed a fence on its property, landlocking the rear exit of the subject property, which meant that the subject property had only one usable exit instead of two. The principals of Kiplou Realty were Howard Glinsky and Kip Glinsky, the sons of former Village Building Inspector Louis Glinsky. Howard Glinsky also served as a village official on the Village Planning Board in the mid-1990s, on the Village Board of Trustees from 1998 until 2000, and as Village Mayor from 2001 until 2003.

In 2003 the former owner of the subject property applied for permission to convert the third floor to an artist's studio and residence, which was a permitted use by special permit. By letter dated March 26, 2003, Conlee denied the application based upon the Fire Code, on the ground that the building had only one usable exit. A second application by a proposed tenant, Geoff Welch, for a "certificate of occupancy" to convert the third floor to a studio and office was denied by letter dated May 23, 2003 from Conlee, again on the ground that the building had only one usable exit.

The Town of Ramapo Building Department inquired as to the applicability and effect of the Fire Code. In response, Erika Krieger, Regional Architect for the New York State Department of State, assigned to the Peekskill Regional Office-Codes Division, stated by letter dated August 25, 2003 that her "advisory opinion" was that "[a]s long as the uses remain consistent with the last legal use, and no substantial work is performed, the second and third floor spaces can still be occupied, with the existing, though substandard exit."

In January 2005, after rejecting an offer to purchase from Howard Glinsky, co-owner of the adjoining property, the prior owner of the subject property sold it to the plaintiff. When the plaintiff took title, the third floor was unoccupied and used for storage. Shortly after purchasing the subject property, the plaintiff applied for a "certificate of use" of the third floor as an artist's studio with no residence. Village of Suffern Code § 266-

48 (D) (1) provides, in pertinent part, that a "certificate of use" is required for an existing structure for a change of use.

Conlee denied the plaintiff's application on the ground that "the third floor does not meet the egress requirements of the current New York State Code" which required two exits. He explained:

> "[t]he first and second floors of this building have had a continuous use; therefore, [they] fall under old state code requirements. The third floor, however, has not had any continuous legal use that we can find record of, and therefore, any new use must comply with the current state code."

He suggested that the plaintiff apply to Krieger for a state variance.

The plaintiff spoke to Krieger, who, in a letter dated September 26, 2005, reiterated her prior advisory opinion that the current Fire Code would not apply to a use consistent with the last legal use of the space, unless there is "a change of occupancy, or substantial alteration or construction work." However, according to Conlee, Krieger supported his position, since the "last legal use" of the space was for storage, which is not listed among the permitted uses for the CB district.

After the Village Attorney informed the plaintiff that the Village of Suffern would not intervene to rectify the situation caused by the fence, on the ground that any dispute the plaintiff may have with Kiplou Realty was a "private matter," Loniewski attempted to negotiate a compromise between the plaintiff and Kiplou Realty. Pursuant to that compromise, the plaintiff obtained its permission to replace the fence with a new fence with a "panic bar" for egress. Since the proposed new fence exceeded eight feet in height, it required a height variance. On September 15, 2005, the variance was granted for a "two year period."

On September 17, 2005, the plaintiff complained to Loniewski by e-mail, and by letters to the Mayor and the Zoning Board of Appeals, about the attendant circumstances and that a two-year variance was useless. Thereafter, Loniewski issued three orders "to remove violation" against the subject property, each dated September 27, 2005, for "flaking and crumbling" surfaces, broken glass panes in the rear of the building, and overgrowth of vegetation. He testified at his deposition that the orders were issued pursuant to a "sweep" directed by the Mayor, after the

Mayor drove around the area in September 2005 and pointed out "a lot of places downtown he'd like to see me pay a visit to." An "order to remove violation" was issued against one other property on that day, on the ground that the building was being used without a certificate of use, but it appears that this violation was ascertained from a file review, not a sweep of the area.

## The Instant Action

In February 2006, the plaintiff commenced this action against the Village Board of Trustees, asserting six causes of action. The first cause of action alleged that the defendants violated the plaintiff's property rights in violation of 42 USC § 1983. The second and third causes of action sought injunctive and monetary relief for alleged discriminatory enforcement of the zoning code of the Village, in violation of the plaintiff's rights to equal protection of the laws. The fourth cause of action alleged conspiracy to abridge the plaintiff's rights to equal protection of the laws, in violation of 42 USC §§ 1983 and 1985. The fifth cause of action alleged the tort of wrongful interference with prospective economic advantage. The sixth cause of action sought a judgment declaring that, pursuant to the opinion of Erika Krieger, the plaintiff was not required to comply with the current Fire Code.

Thereafter, in April 2007, the plaintiff, with leave of the court, amended her complaint to add Conlee, Loniewski, and the Village as parties, and a seventh cause of action to recover damages for retaliation for the exercise of her civil right of free speech.

The defendants, in their answer, asserted, inter alia, that the plaintiff failed to exhaust administrative remedies, failed to comply with the General Municipal Law relating to filing a notice of claim, qualified immunity, and that the individual defendants were not acting under color of state law.

## The Parties' Motions

The plaintiff moved for summary judgment declaring that the actions of the defendants were unconstitutional, and for injunctive relief. In support of her motion, she noted that the 1988 certificate of occupancy for use of the premises as a store was never terminated in compliance with Village of Suffern Code § 266-49 (D), which authorized the termination of a certificate of occupancy upon notice to the holder based upon a violation of the terms of the certificate of occupancy.

With respect to the fence built by Kiplou Realty, the plaintiff noted that both Conlee and Loniewski testified at their depositions that the fence constituted a violation of the Village of Suffern Code, yet no violation had been issued. The plaintiff claimed that the defendants were selectively enforcing code standards "under color of law and pursuant to accepted municipal policy, practice, custom and procedure." The plaintiff further noted that Fire Code of New York State § 1001.2 provided that buildings constructed prior to the current code were only required to "have exits maintained in compliance with the code in effect at the date of substantial completion," not current provisions.

The plaintiff claimed that when she complained about the situation, Loniewski issued three violations against the subject property on September 27, 2005 for long-standing conditions. In contrast, only two of the 2,295 total violations and/or warnings of violations issued by the Village from 2000 to 2006 were issued against Kiplou Realty, which owned approximately six properties.

The defendants cross-moved to dismiss the amended complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, or in the alternative, for summary judgment pursuant to CPLR 3212. In support of their motion, they noted that the plaintiff never challenged any determinations by the Building Inspector, nor did she challenge the conditional variance granted by the Zoning Board of Appeals, in proceedings pursuant to CPLR article 78.

The defendants further noted that the third floor of the subject property had remained vacant for a number of years. Pursuant to Village of Suffern Code § 266-14 (B) (5) relating to nonconforming uses: "If a nonconforming use ceases operation for any reason for six (6) continuous months during any twelve-month period . . . any future use of the land, building or structure shall be in conformity with the provisions of this Zoning Law."

The defendants asserted that the plaintiff was not being treated differently from those similarly situated, since her application for a certificate of use was treated the same as Geoff Welch's application in 2003 to convert the third floor to a studio and office—both applications were denied.

The defendants further noted that the plaintiff never filed a notice of claim.

The Supreme Court, in the order appealed from, denied both the motion and the cross motion. The defendants' cross motion was denied on the ground that "when the Plaintiff is given the benefit of every possible favorable inference, causes of action exist." The question of whether the defendants were entitled to summary judgment was not addressed.

The issues before this Court relate to whether the defendants are entitled to relief pursuant to CPLR 3211 (a) (7) or 3212.

A motion to dismiss a cause of action pursuant to CPLR 3211 (a) (7) should not be granted "if, taking all facts alleged as true and according them every possible inference favorable to the plaintiff, the complaint states in some recognizable form any cause of action known to our law" (*Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d 34, 38 [2006]; *see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 [2005]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). In making such a determination, evidentiary material may be considered to "remedy defects in the complaint" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976]; *Leon v Martinez*, 84 NY2d at 88), "and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it," dismissal may not be predicated on such evidentiary material (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]; *511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151 [2002]).

When considering a motion for summary judgment, the initial test is whether the movant established prima facie entitlement to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Once this showing has been made . . . the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*id.; see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Substantive Due Process

"In the land-use context, 42 USC § 1983 protects against municipal actions that violate a property owner's rights to due process, equal protection of the laws and just compensation for the taking of property under the Fifth and Fourteenth Amendments to the United States Constitution" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 626 [2004]; *Town of Orangetown v Magee*, 88 NY2d 41, 49 [1996]). However, "42 USC § 1983 is not

simply an additional vehicle for judicial review of land-use determinations" (*Bower Assoc. v Town of Pleasant Val.*, 304 AD2d 259, 263 [2003]). In order to establish a deprivation of a property right in violation of substantive due process, the claimant must establish (1) a cognizable or vested property interest, not the mere hope of one, and (2) that the municipality acted " 'without legal justification and motivated entirely by political concerns' " (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 628, quoting *Town of Orangetown v Magee*, 88 NY2d at 53). "As for the second element of the test, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense' " (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 628, quoting *Cuyahoga Falls v Buckeye Community Hope Foundation*, 538 US 188, 198 [2003]; *St. Joseph Hosp. of Cheektowaga v Novello*, 43 AD3d 139, 144 [2007]).

In the instant case, the plaintiff's evidentiary material established that there were certificates of occupancy for the subject property, which were deemed void by the Village without notice to the property owner, and without compliance with the procedure for revocation of a certificate of occupancy. However, the defendants did not act based upon their perception that there were no certificates of occupancy. Rather, the plaintiff was denied use of the third floor of her property, based upon a perception that pursuant to Village of Suffern Code § 266-14 (B) (5), once the use of the third floor was discontinued for the period required for abandonment of a prior nonconforming use, the exemption from the current Fire Code for buildings substantially completed prior to its effective date no longer applied.

This interpretation was based upon the fact that the Village had incorporated the Fire Code into the Village of Suffern Code provisions dealing with building construction and fire prevention (*see* Village of Suffern Code § 96-1). Pursuant to Village of Suffern Code § 96-5, any "person owning, operating or maintaining property or premises within the scope" of the Fire Code was required to comply with its provisions.

However, Village of Suffern Code § 96-5 (part of the village building code) limits the applicability of the obligation to comply with the Fire Code, as incorporated in the village building code, to "property or premises within the *scope*" of the Fire Code (emphasis supplied). If, by its terms, the current Fire Code does not apply to the subject property pursuant to the exception for buildings substantially completed prior to its effective date, the subject property is not within its scope.

Second, the Village of Suffern Code § 266-14 (B) (5) provides that once a "nonconforming use" is abandoned, "future use of the land, building or structure shall be in conformity with the provisions of this *Zoning Law*" (emphasis supplied): no reference is made to building codes or fire codes.

■ Nevertheless, despite these infirmities, the defendants' conduct in denying the plaintiff's applications for certificates of use based upon an apparent misinterpretation of village code provisions did not constitute egregious official conduct. Accordingly, the plaintiff does not state a cause of action sounding in the deprivation of property rights in violation of 42 USC § 1983 as alleged in her first cause of action, and that cause of action should have been dismissed pursuant to CPLR 3211 (a) (7).

Declaratory Relief

■ The plaintiff's contention that the subject property is exempt from current provisions of the Fire Code on the ground that her structure was built prior to the enactment of those provisions and no "major renovations occurred that would make these provisions applicable" (*Ryan v KRT Prop. Holdings, LLC*, 45 AD3d 663, 665 [2007]; *see Meehan v David J. Hodder & Son, Inc.*, 13 AD3d 593, 594 [2004]; *see also Altschuler v Gramatan Mgt., Inc.*, 27 AD3d 304 [2006]) is more appropriately addressed in her sixth cause of action for declaratory relief. On this point, the defendants contend that the plaintiff failed to exhaust her administrative remedies. However, it is well settled that "[t]he exhaustion rule . . . is not inflexible" and "need not be followed . . . when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power . . . or when resort to an administrative remedy would be futile" (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]; *see Matter of Community Related Servs., Inc. [CRS] v Novello*, 41 AD3d 323 [2007]). Prior to the commencement of the instant action, village officials urged the plaintiff to apply for a variance from the provisions of the Fire Code. However, Erika Krieger, Regional Architect for the New York State Department of State, indicated that a variance was not necessary.

Once this action was commenced, the defendants took the position that the plaintiff should have challenged each of its determinations in proceedings pursuant to CPLR article 78. However, at issue was the Village's classification of the subject property as subject to the current provisions of Fire Code, depriving the plaintiff of the use of her property in alleged violation of vested property rights, not the denial of a particular ap-

plication for a certificate of use. Thus, a cause of action for a declaratory judgment, not a proceeding pursuant to CPLR article 78, was the proper vehicle to seek relief (*see Matter of Huntington Hills Assoc., LLC v Town of Huntington*, 49 AD3d 647 [2008]). The plaintiff's sixth cause of action states a cause of action for declaratory relief in her favor, and the defendants failed to establish as a matter of law that she is not entitled to such relief.[1] Accordingly, that branch of the cross motion which was to dismiss the sixth cause of action for failure to state a cause of action, or in the alternative, for summary judgment pursuant to CPLR 3212 was properly denied.

Equal Protection of the Laws

The plaintiff's second, third, and fourth causes of action alleging discriminatory enforcement of the Village of Suffern Code relied not only upon the deprivation of her use of her third floor, but also selective enforcement of code violations against her property. She alleged that the orders to remove violations imposed upon her property on September 27, 2005 constituted discriminatory enforcement. As previously noted, Loniewski claimed that the imposition of those orders was part of a "sweep" of downtown ordered by the Mayor. However, only one other property was issued an order to remove a violation on that day, and it appears that violation was ascertained from a file review, not a sweep of the area.

"[A] violation of equal protection arises where *first*, a person (compared with others similarly situated) is selectively treated and *second*, such treatment is based on impermissible considerations . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 631; *see Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 693 [1979]). In determining whether persons are similarly situated, "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent. Exact correlation is neither likely nor necessary" (*Penlyn Dev. Corp. v Incorporated Vil. of Lloyd Harbor*, 51 F Supp 2d 255, 264 [1999]).

The person must be singled out for an impermissible motive not related to legitimate governmental objectives (*see Biz-*

---

1. We decline the plaintiff's invitation to search the record to award her summary judgment on the sixth cause of action. In order to demonstrate her entitlement to relief, the plaintiff will have to show that no major renovations occurred which would make current code provisions applicable (*see Ryan v KRT Prop. Holdings, LLC*, 45 AD3d at 665).

*zarro v Miranda*, 394 F3d 82, 87 [2005]; *Gallo v Suffolk County Police Dept.*, 360 F Supp 2d 502, 511 [2005]), which could include personal or political gain, or retaliation for the exercise of constitutional rights (*see Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 631; *Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d at 693). In the instant case, the plaintiff is asserting that her building was singled out from other downtown buildings similarly situated because she exercised her rights to free speech under the First Amendment to the United States Constitution when she complained about the treatment of her application for a variance for the fence. In so doing, she adequately pleaded her causes of action.

Since "enforcement officials are unlikely to avow that their intent was to practice constitutionally proscribed discrimination" and the "difficulties in obtaining detailed knowledge of unprosecuted violators in order to meet the burden of demonstrating similarity are likely to be great" (*Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d at 695), the absence of similar action against other buildings as part of the downtown "sweep" constituted some evidence of disparate treatment (*id.*).

The plaintiff contended that the defendants were selectively enforcing code standards "under color of law and pursuant to accepted municipal policy, practice, custom and procedure," thus implicating the Village and its Board of Trustees (*see Monell v New York City Dept. of Social Servs.*, 436 US 658 [1978]). A municipal custom or policy can be shown by establishing that an official who is a final policy maker directly committed or commanded the violation of the plaintiff's rights (*see Board of Comm'rs of Bryan Cty. v Brown*, 520 US 397, 406 [1997]). The plaintiff's description of a retaliatory policy by the Village, supported by evidence of a "sweep" of downtown directed by the Mayor, which apparently only affected the plaintiff's property, was sufficient to state a cause of action against it pursuant to 42 USC § 1983 (*see Town of Orangetown v Magee*, 88 NY2d at 48-49). On that branch of their cross motion which was for summary judgment, the defendants failed to establish entitlement to judgment as a matter of law with respect to these causes of action, and therefore are not entitled to summary judgment dismissing these causes of action.

Deprivation of Freedom of Speech

■ The plaintiff's seventh cause of action alleging deprivation of her civil right of free speech is duplicative of her causes of action alleging a violation of equal protection of the laws and

should be dismissed on that basis (*see Maiolini v McAdams & Fallon, P.C.*, 61 AD3d 644 [2009]; *Gelfand v Oliver*, 29 AD3d 736 [2006]).

Generally, the elements of a cause of action alleging deprivation of the right of free speech in a case involving criticism of public officials by private persons (*see Gill v Pidlypchak*, 389 F3d 379, 381 [2004]) are (1) plaintiff has an interest protected by the First Amendment, (2) defendants' actions were "motivated or substantially caused" by her exercise of that right, and (3) defendants' actions "effectively chilled" the exercise of her First Amendment right (*Curley v Village of Suffern*, 268 F3d 65, 73 [2001]; *see Butler v City of Batavia*, 323 Fed Appx 21 [2009]; *Morrison v Johnson*, 429 F3d 48, 50 [2005]).[2] In the instant case, the plaintiff does not allege how the defendants' actions actually chilled her exercise of her First Amendment rights (*id.*). However, she does allege that the defendants retaliated against her exercise of her First Amendment rights. She contends that the defendants' retaliation resulted in selective enforcement of code provisions, constituting punishment for the exercise of the constitutional right to free speech, in violation of her right to equal protection of the laws. Accordingly, her seventh cause of action fails to state a cause of action independent of her causes of action sounding in violation of equal protection.

Notice of Claim Requirements

 A cause of action asserted pursuant to 42 USC § 1983 does not require service of a notice of claim (*see Rapoli v Village of Red Hook*, 41 AD3d 456 [2007]). However, the plaintiff's fifth cause of action sounding in the common-law tort of wrongful interference with prospective economic advantage required the service of a notice of claim as a condition precedent for maintaining it (*see Montano v City of Watervliet*, 47 AD3d 1106 [2008]; *Clemens v MTA N.Y. City Tr. Auth.*, 19 AD3d 636 [2005]). Since the plaintiff failed to allege service of a notice of claim, the fifth cause of action should have been dismissed for failure to state a cause of action.

---

2. Where the plaintiff is a public employee or an inmate in the custody of the municipality, the plaintiff need not show that his or her speech was chilled: it is sufficient to demonstrate that the speech was a substantial or motivating factor in the defendants taking an adverse action against the plaintiff which would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights (*see Morrison v Johnson*, 429 F3d 48, 50 [2005]; *Gill v Pidlypchak*, 389 F3d 379, 384 [2004]).

## Qualified Immunity

The individual defendants asserted the defense of qualified immunity which applies if their conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known' " (*Pearson v Callahan*, 555 US —, —, 129 S Ct 808, 815 [2009], quoting *Harlow v Fitzgerald*, 457 US 800, 818 [1982]). Conlee was an employee of the Town of Ramapo performing duties for the Village pursuant to a contract between the Town of Ramapo and the Village. He established as a matter of law that, although he may have mistakenly violated the plaintiff's rights under the Village of Suffern Code in a good faith attempt to enforce village policy, he did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The plaintiff, in opposition, failed to raise a triable issue of fact.

However, the remaining defendants failed to establish their entitlement to judgment as a matter of law on this issue.

## Conclusion

The defendants' remaining contentions are without merit or need not be reached in light of our determination.

Accordingly, the order appealed from is modified, on the law, by deleting the provisions thereof denying those branches of the defendants' cross motion which were to dismiss the first, fifth, and seventh causes of action, and all causes of action insofar as asserted against Steven Conlee, and substituting therefor provisions granting those branches of the defendants' cross motion, and as so modified, the order is affirmed insofar as appealed from.

SPOLZINO, J.P., ANGIOLILLO and LOTT, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof denying those branches of the defendants' cross motion which were to dismiss the first, fifth, and seventh causes of action, and all causes of action insofar as asserted against Steven Conlee, and substituting therefor provisions granting those branches of the cross motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.